[Cite as *Moehrman v. Moehrman*, 2018-Ohio-5106.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Laura M. Moehrman, :

      Plaintiff-Appellee, : No. 18AP-304
                          (C.P.C. No. 17DR-1849)

v. :

                          (REGULAR CALENDAR)

Daniel J. Moehrman, :

      Defendant-Appellant. :

---

D E C I S I O N

Rendered on December 18, 2018

---

**On brief**: *Babbitt & Dahlberg LLC*, *Gerald J. Babbitt*, and *DeAnna J. Duvall*, for appellee. **Argued**: *Gerald J. Babbitt*.

**On brief**: *Daniel J. Moehrman*, pro se. **Argued**: *Daniel J. Moehrman*.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

PER CURIAM.

{¶ 1} This is an appeal by defendant-appellant, Daniel J. Moehrman, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a decree of divorce on grounds of gross neglect of duty.

{¶ 2} On May 12, 2017, plaintiff-appellee, Laura M. Moehrman, filed a complaint for divorce against appellant, alleging gross neglect of duty and extreme cruelty. Appellant filed an answer on June 2, 2017.

{¶ 3} On November 20, 2017, the matter came for hearing before the trial court. By decision and entry filed December 14, 2017, the trial court found appellee met the burden of establishing gross neglect of duty, and the action should proceed to a final hearing. On April 9, 2018, the matter came before the trial court for final hearing and the

court approved the parties' stipulation as to the valuation of property. On April 18, 2018, the trial court filed a decision and entry granting a decree of divorce.

{¶ 4} Appellant's pro se brief does not set forth a statement of assignment of error as required by App.R. 16(A). In the "conclusion" section of his brief, appellant requests this court "reverse the divorce order" of the trial court. For purposes of appeal, we construe his argument as challenging the trial court's grant of a decree of divorce based on a finding of gross neglect of duty.

{¶ 5} R.C. 3105.01(F) states in part: "[t]he court of common pleas may grant divorces for * * * [a]ny gross neglect of duty." In general, "gross neglect of duty refers to an omission of a legal duty." *Simpson v. Simpson,* 5th Dist. No. 02-COA-006, 2002-Ohio-6266, ¶ 8, citing *Mark v. Mark,* 145 Ohio St. 301 (1945), paragraph three of the syllabus. In accordance with Ohio law "a husband and wife owe each other obligations of mutual respect, fidelity, and support." *Id.* Nonetheless, "courts have struggled with determining what constitutes gross neglect of duty." *Id.* Because the term gross neglect of duty is "elusive of concrete definition," it has been held that "[t]he determination of what facts will establish * * * gross neglect of duty should be left to the broad, but sound, discretion of the trial court." *Deuri v. Deuri,* 9th Dist. No. 12869 (July 15, 1987), citing *Porter v. Lerch,* 129 Ohio St. 47 (1934.) Further, "[a]n appellate court will not reverse a trial court's determination of proper grounds for divorce absent a showing of an abuse of discretion." *Robinson v. Robinson,* 6th Dist. No. 91WD122 (Oct. 9, 1992).

{¶ 6} Both appellee and appellant testified at the hearing before the trial court on November 20, 2017. Appellee also presented the testimony of Judith Miller, her stepmother, and Sarah Gleichauf, her daughter.

{¶ 7} Appellee testified she and appellant were married on August 10, 1991. In 1992 or 1993, the parties purchased a three bedroom home on Campbell Avenue. When appellee was pregnant with their fifth child, she expressed to appellant her view that they needed a larger home and "a safer neighborhood for our children." (Tr. at 11.) Appellant did not want to move, and told appellee the children "could have slept on the floor." (Tr. at 12.)

{¶ 8} In 2000, the parties purchased a four bedroom home on South Roys Avenue. Appellee testified appellant "had a really hard time with that. He did not want to buy the home because he felt that we couldn't afford it." (Tr. at 11.) Appellee had money

of her own to purchase the home, but appellant resisted. Appellee "eventually * * * talked him into it." (Tr. at 11.) Appellee paid for the house out of her own inherited trust money, and she made the mortgage payments. Appellee testified appellant "has been unwilling to help with insurance or taxes or the mortgage." (Tr. at 36.)

{¶ 9} Aside from minor repairs and performing outside lawn work, appellant "was not concerned with making any major improvements to [the] home." (Tr. at 17.) Appellee related that their bathroom had "mold growing all over the walls and the ceiling." (Tr. at 14-15.) Appellee asked appellant to install an exhaust fan, but he refused. Appellee considered the mold "a health hazard for our children." (Tr. at 15.)

{¶ 10} According to appellee, she and appellant did not have "partnership discussions. If [she] had something to say, it would turn into an argument." (Tr. at 20.) Appellee "did not feel comfortable initiating very many discussions because it just ended up as being my fault or something was wrong with me." (Tr. at 20.) Appellee testified appellant "would belittle me, he would just talk to me until I gave up, or we would just stop talking to each other." (Tr. at 25.)

{¶ 11} Appellee recalled an incident involving appellant and their son which occurred while she was attending an out of town conference; appellee received a call from her 17-year-old son who stated appellant "just jumped him, that he didn't feel safe in the house and that [appellant] was yelling at him and he was scared." (Tr. at 31.) Her son related that he and his father "were scuffling in the hallway." (Tr. at 31.) Appellee's 22-year-old daughter then called appellee to discuss "the incident, she's crying and saying that [appellant] kicked her out of the house." (Tr. at 31-32.) Appellee called her parents, who "came down and got the kids out of the house." (Tr. at 32.) Appellee's parents took the children to a hotel. When appellee returned from the conference, she "went straight to the hotel, * * * an extended stay hotel where the kids and I stayed for six weeks." (Tr. at 32.) Appellee sent appellant an e-mail asking him to "move out and give us some space; I would like you to get a physical; I would like us to go to marriage counseling, and I would like the family to go to family counseling as well." (Tr. at 33.) Appellant "was adamant that he would not leave the house." (Tr. at 33.)

{¶ 12} Appellee and appellant eventually "agreed to a dissolution. He agreed to move out." (Tr. at 43.) Appellant subsequently "said, no, I don't want a dissolution, I don't want a divorce, and we can stick this out." (Tr. at 43.) Appellant informed appellee

that he "hadn't loved [her] for years." (Tr. at 45.) Appellant sent an e-mail to appellee stating in part: "I have been angry, and I have been too stubborn to forgive you for the things that ha[ve] made me angry. I have allowed my anger to get in the way of loving you. I am truly sorry for not loving you the way that you deserved to be loved. I take full responsibility for not caring for you the way a husband should care for his wife." (Tr. at 45.)

{¶ 13} Miller, appellee's stepmother, described appellant's involvement with the family as "minimal." (Tr. at 75.) She stated appellee "did what had to be done. I always felt she was a single mom." (Tr. at 75.) Miller stated when appellee "would make a statement, [appellant] often made counter statements that were * * * belittling." (Tr. at 81.)

{¶ 14} Gleichauf, age 25, the daughter of appellee and appellant, testified her father did not show affection toward her mother. In April 2015, Gleichauf's brother had just been diagnosed with Type 1 diabetes, and it was a struggle for him to get up in the morning. When appellee was in Florida on a business trip, she asked Gleichauf "to keep an eye on [my brother] and specifically keep an eye on [my brother] and my dad." (Tr. at 98.) Appellee had informed Gleichauf of a prior incident when appellant "had grabbed [her brother] without warning, without provocation, and that it scared her." (Tr. at 98-99.)

{¶ 15} On a morning when appellee was away, Gleichauf "heard my dad yelling at him * * * to get up." (Tr. at 99.) Appellant "said, [t]his is why nobody likes you, and then he just kept * * * yelling at him to get up." (Tr. at 99.) Gleichauf later "heard a scuffle * * * in the hallway." (Tr. at 99.) She ran over to the hallway and her brother "was on his back on the floor, my dad was on top of him, and they were wrestling." (Tr. at 99.) Gleichauf ran over and tried to "push my dad off of him." (Tr. at 99.) Eventually, her brother "kicked" appellant and "got away." (Tr. at 100.)

{¶ 16} Gleichauf "was yelling at my dad to go downstairs." (Tr. at 100.) Appellant said to her: "I'm the parent and that if [you] don't agree with the way [I] parent[] that [you] can pack [your] shit and leave." (Tr. at 100.) Later that day, Gleichauf phoned her mother, and Gleichauf's grandparents arrived to take the children to a hotel where they remained for six weeks.

{¶ 17} Appellant testified on his own behalf. Appellant stated it had been a challenge for him with appellee's "side of the family." (Tr. at 111.) He often "felt as if [he] ha[d] been belittled, put down * * * because I could not make as much money as her dad did, her side of the family." (Tr. at 111.) According to appellant, appellee's family encouraged the idea "that I should be making more money." (Tr. at 112.)

{¶ 18} Regarding the incident with his son, appellant testified he "probably could have handled that a better way but I didn't." (Tr. at 114.) He also acknowledged he "probably haven't spent as much time with my wife * * * as she's wanting me to or I've wanted to." (Tr. at 115-16.) He further stated: "I've been mean to her." (Tr. at 118.)

{¶ 19} In considering the evidence presented, the trial court found "a pattern of behavior and dysfunction" by appellant "that is by its nature 'gross neglect of duty.' " The court cited testimony by appellee that appellant: (1) put his employment above his family, (2) worked too many hours for too little pay, (3) provided no emotional support to his wife, (4) was emotionally abusive to her and their children, and (5) treated appellee in a derogatory and degrading manner. The trial court found that testimony regarding appellant's behavior "revealed an almost obsessive personality, unrelenting in his position"; the court also cited evidence as to appellant's anger and "rare acknowledgement of fault."

{¶ 20} The trial court further noted corroborating evidence from appellee's stepmother who testified as to appellant's unwillingness to provide assistance in maintaining the household, and who confirmed appellee's testimony regarding an incident in which appellant's treatment of the children "deteriorated to the point she felt it necessary to remove the children and take them to a hotel where the children subsequently resided for the summer." (Decision & Entry at 3.) The trial court also cited the testimony of Gleichauf, who related appellant "was inattentive, unaffectionate, uninvolved and not loving." (Decision & Entry at 4.) Gleichauf also corroborated the incident between her brother and appellant, which "gave rise to the need for the children to leave and live in a hotel." (Decision & Entry at 4.) The trial court found Gleichauf's contemporaneous notes reflected "a verbal, as well as a physically abusive situation." (Decision & Entry at 4.)

{¶ 21} Under Ohio law, "[t]he trial court has wide discretion to determine the sufficiency of evidence for granting a divorce on the ground of gross neglect of duty."

*Dickson v. Dickson,* 8th Dist. No. 43010 (May 27, 1982). Further, in making such determination, a trial court may "consider the totality of the circumstances." *Rohrbacher v. Rohrbacher,* 3d Dist. No. 1-79-70 (Mar. 27, 1980).

{¶ 22} The evidence before the trial court in the present case was sufficient to support a finding of gross neglect of duty. In addition to the testimony cited above regarding appellant's behavior and his relationship with his wife and children, appellant's own testimony corroborated the fact he was "mean to [appellee]." (Tr. at 118.) On review, the trial court did not abuse its discretion in granting appellee's request for a divorce based on a finding of gross neglect of duty.

{¶ 23} Based on the foregoing, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is hereby affirmed.

*Judgment affirmed.*

BROWN, P.J., DORRIAN and HORTON, JJ., concur.

_____